WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Douglas P. Baumstein
Scott Greissman
Elizabeth Feld

*Counsel for BoA National Association, BoA Merrill Lynch, Barclays, Citicorp, Citigroup Financial, Citigroup Global Credit Suisse Cayman, D.B. Cayman, Deutsche Bank AG, Macquarie, MIHI and RBC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SUNEDISON, INC.**, *et al.*, | Case No. 16-10992 (SMB) |
| Debtors.[1] | **(Jointly Administered)** |
| | |
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**, on behalf of the estates of the Debtors, | Adversary Proceeding No. 16-01228 (SMB) |
| Plaintiff | **Hearing Date: February 7, 2017** |
| v. | **Objection Deadline: January 31, 2017** |
| | **Re: Adv. Proc. No. 1, 18, 35** |
| **WELLS FARGO BANK, N.A.**, *et al.* | |
| Defendants | |

# NEWLY NAMED PREPETITION FIRST LIEN
# LENDERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); and SunE Minnesota Holdings, LLC (8926). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ADDITIONAL FACTUAL BACKGROUND ..............................................................................3

    A.    The DIP Orders ........................................................................................................3

    B.    The Adversary Proceeding And Amended Complaint ............................................6

ARGUMENT ..................................................................................................................................7

I.    Standard ..............................................................................................................................7

II.    The Court Should Dismiss The Amended Complaint With Respect To The New First Lien Defendants For The Reasons Set Forth In The Earlier-Filed Motion To Dismiss ................................................................................................................................7

III.    Because The Committee Did Not Commence An Action Against The New First Lien Defendants Within The Challenge Period, The Claims Against The New First Lien Defendants Are Released And The Committee Is Enjoined From Pursuing Them ...................................................................................................................8

    A.    The Bankruptcy Court Should Enforce The Deadlines Established By The Final DIP Order ........................................................................................................8

    B.    The Committee's Claims Are Released And Enjoined Pursuant To The Final DIP Order ................................................................................................................9

    C.    The Relation-Back Doctrine Is Inapplicable.........................................................11

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust
   Litig.), 995 F. Supp. 2d 125 (E.D.N. Y. Jan. 31. 2014) ............................................................15

In re Liquidation Trust v. Daimler AG (In re Old CarCo LLC), 435 B.R. 169
   (Bankr. S.D.N.Y. 2010) ............................................................................................................10

Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 468 B.R. 620 (Bankr.
   S.D.N.Y. 2012) .........................................................................................................................15

ResCap Liquidating Trust v. LIebert Corp. (In re Residential Capital, LLC), No.
   14-01969 (MG), 2015 Bankr. LEXIS 1820 (Bankr. S.D.N.Y. 2015) .......................................10

Taylor v. Freeland & Kronz, 938 F.2d 420 (3d Cir. 1991), aff'd, 503 U.S. 638
   (1992) .......................................................................................................................................11

United States v. Fifty-Two Firearms, 362 F.Supp.2d 1308 (M.D. Fl. 2005) ................................13

**STATUTES AND RULES**

Bankruptcy Code §§ 502(d), 544, 545, 547, 548, 550 and 553 .......................................................7

Fed. R. of Bankruptcy P. 7009 ........................................................................................................4

Fed. R. of Bankruptcy P. 7012(b) ...................................................................................................4

Fed. R. of Bankruptcy P. 7015 ......................................................................................................14

Fed. R. of Civ. P. 12(b)(6) and 9(b) ................................................................................................4

Fed. R. Civ. P. 15(c) ..........................................................................................................14, 15, 16

Bank of America, National Association ("**BoA National Association**"), Bank of America Merrill Lynch ("**BoA Merrill Lynch**"),[2] Barclays Bank PLC ("**Barclays**"), Citicorp North America, Inc. ("**Citicorp**"), Citigroup Financial Products Inc. ("**Citigroup Financial**"), Citigroup Global Markets, Inc. ("**Citigroup Global**"), Credit Suisse AG Cayman Islands ("**Credit Suisse Cayman**"),[3] Deutsche Bank AG Cayman Islands ("**D.B. Cayman**"), Deutsche Bank AG New York ("**Deutsche Bank AG**"), Macquarie Capital (USA) Inc. ("**Macquarie**"), MIHI LLC ("**MIHI**"), The Royal Bank Of Canada ("**RBC,**" and collectively with the other movants herein, the "**New First Lien Defendants**"), by their undersigned counsel, hereby move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), as made applicable by Federal Rules of Bankruptcy Procedure 7012(b) and 7009, respectively, to dismiss with prejudice the Amended Adversary Complaint (the "**Amended Complaint**" or "**Am. Compl.**") of the Official Committee of Unsecured Creditors (the "**Committee**") for SunEdison Inc. ("**SUNE**" or the "**Company**") and its affiliated debtors.

## PRELIMINARY STATEMENT[4]

As set forth in the previously-briefed First Lien Motion to Dismiss, it is clear that the Committee's challenges to the liens SUNE granted to the First Lien Agent are without basis and were asserted as a mere afterthought. Further confirming the Committee's half-hearted and haphazard approach to its claims against the First Lien Lenders, the Committee's original

---

[2] BoA Merrill Lynch is not an actual entity; it is a trade name. BoA National Association, which is named as a defendant, is the Bank of America entity that participated in the first lien loans here.

[3] Credit Suisse AG Cayman Islands is not the correct name of the entity that participated in the first lien loan; the correct name is Credit Suisse AG, Cayman Islands Branch.

[4] Unless otherwise stated, capitalized terms have the meanings set forth in the Prepetition First Lien Administrative Agent's and Lenders' Memorandum of Law in Support of Motion to Dismiss ("**First Lien Motion to Dismiss**") [Adv. Proc. No. 18].

complaint named only four of the sixteen First Lien Lenders now identified, and its claims against the twelve recently named New First Lien Defendants were all first asserted <u>after</u> the expiration of the Challenge Period established in the Final DIP Order (defined below). Thus, pursuant to the plain language and clear intent of the Final DIP Order, the Committee's claims against the New First Lien Defendants are released and the Committee is enjoined from asserting them.

The Committee's failure to assert claims timely is especially egregious here. The Committee, the First and Second Lien DIP lenders and the Debtors negotiated for weeks over the terms of a Final DIP Order that included a carefully bargained "committee settlement annex," pursuant to which the Committee consented to the DIP Facility and to the form of the Final DIP Order in exchange for significant economic and procedural benefits and concessions. Under the Final DIP Order, among other things, the Committee was granted automatic standing to pursue avoidance or lender-liability type claims so long as they were commenced prior to the expiration of the so-called Challenge Period—originally 75 days from the date of the Final DIP Order. The original 75 day Challenge Period was subsequently extended twice, to a total of 135 days, as part of good faith settlement negotiations to reach a global settlement of these cases. The Committee was also provided with $175,000 to investigate such claims and their professionals, in fact, spent nearly $900,000 in investigating and preparing the original complaint.

Thus, there is no excuse for the Committee's failure to commence an adversary proceeding against the New First Lien Defendants within the Challenge Period. It cannot be disputed that the Committee had ample time to discover the identity of the New First Lien Defendants prior to the end of the Challenge Period or that its failure to name them was based on some mistake as to the proper party's identity. Indeed, trading in the First Lien Facility is

2

infrequent, so the Committee was not required to aim at a moving target. Moreover, the Committee received documents from Deutsche Bank AG, one of the New First Lien Defendants, as part of its investigation before the Challenge Period terminated, yet never saw fit to name it or any other New First Lien Defendant before the expiration of the Challenge Period. The Committee's indolence should not be excused and the Amended Complaint should be dismissed against the New First Lien Defendants.

## ADDITIONAL FACTUAL BACKGROUND

The detailed factual background is set forth in the First Lien Motion to Dismiss and is incorporated herein by reference.

### A. The DIP Orders

On April 21, 2016 (the "**Petition Date**"), certain of the Debtors commenced these Chapter 11 cases. On April 26, 2016, this Court entered an interim DIP Order [Docket No. 87], pursuant to which the DIP Lenders (as defined in the Final DIP Order (defined below)) provided the Debtors with $90,000,000 of "new money" financing on an interim basis, pending entry of the Final DIP Order.

The DIP Lenders, the Committee and the Debtors then embarked on weeks of negotiations, ultimately resulting in the entry of the "**Final DIP Order**" [Docket No. 523] on June 9, 2016. Annexed to the Final DIP Order is a 10 page settlement with the Committee concerning the DIP facility which, among other things, provided that the Committee would receive: (i) a $10 million litigation trust for the purposes of investigating and prosecuting causes of action funded from proceeds from the DIP facility; (ii) a $50 million carve-out from the D&O

3

insurance proceeds;[5] (iii) a 10% carve-out from certain asset sale proceeds if such proceeds are in excess of $175 million; and (iv) automatic standing to pursue avoidance or lender-liability type actions the Debtors may have against secured lenders (so no STN motion was required). The secured lenders also provided a number of economic concessions, including, among other things, the reduction of interest rate margins on the Tranche A Roll-Up Loans. In exchange, the Committee consented and agreed to the Final DIP Order, which included standard claims stipulations such as (i) Debtor stipulations as to the amount and validity of certain prepetition indebtedness and enforceability of prepetition liens (Final DIP Order ¶G(i)-(ii)); (ii) an acknowledgment that there are no claims against prepetition lenders concerning their loans or the liens securing them (id. ¶ G(v)); and (iii) releases by the Debtors of all avoidance and other lender-liability like claims against prepetition secured lenders (id. ¶ G(vi)).

Pursuant to Paragraph 9 of the Final DIP Order, the Committee was granted automatic standing to pursue any "**Claims and Defenses**"[6] against the "**Prepetition Secured Parties**"[7] during the "Challenge Period," but not after. The Challenge Period expired on the later of (x) 75 days after entry of the Final DIP Order (i.e., until August 23, 2016) or (y) "any such later date agreed to in writing" by the parties. (Final DIP Order ¶ 9) At the request of the Committee, the Prepetition Secured Parties agreed to extend the Challenge Period twice -- first to September 30,

---

[5] Pursuant to the Committee Settlement, the Committee forfeited its right to the $50 million carve-out from D&O proceeds when it commenced this adversary proceeding.

[6] "Claims and Defenses" are defined in the Final DIP Order as "Avoidance Actions or any other claims, counterclaims, causes of action, complaints, remedies, objections, contests or defenses," (Final DIP Order ¶ 9), and "avoidance actions" means "any causes of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code" (Final DIP Order ¶ 2(d)).

[7] "Prepetition Secured Parties" is defined in the Final DIP Order to include the "Prepetition First Lien Secured Parties" (Final DIP Order ¶ F (III)(i) which is further defined to include "each lender party [pursuant to the First Lien Facility] from time to time" (id. at ¶ F(I)(i)). In other words, the Prepetition Secured Parties includes all New First Lien Defendants.

2016, and then to October 20, 2016.  See [Docket No. 1109]; [Docket No. 1317].  Such extensions effectively doubled the Challenge Period granted to the Committee under the Final DIP Order, increasing the period from 75 days to a total of 135 days from the entry of the Final DIP Order to investigate any alleged Claims and Defenses against the Prepetition Secured Parties and file the Complaint.

Additionally, the parties negotiated a budget of $175,000 (the "**Investigation Budget**") for the Committee to investigate Claims and Defenses against the Prepetition Secured Creditors during the Challenge Period.  (Final DIP Order ¶ 10(b))  The Committee's professionals, in fact, expended multiples of that amount in conducting their investigation.[8]  As part of its investigation, the Committee received documents from, among others, the Debtors, the First Lien Agent and Deutsche Bank AG, one of the New First Lien Defendants.  (Am. Compl. ¶ 168)

Pursuant to the Final DIP Order, if the Committee did not timely commence an adversary proceeding, the stipulations became binding upon them, and the Court ordered that "the Prepetition Secured Parties shall not be subject to any other or further challenge and any party in

---

[8] According to fee statements filed by Weil, Gotshal & Manges LLP ("**Weil**"), primary counsel to the Committee, since the start of the case, they alone have billed at least $629,429.50 for professional services rendered in connection with "Lien/Claim Challenge (Task Code 043)," which is described in the Weil Fee Application as work primarily related to the investigation and challenge of the prepetition secured parties' liens and other litigation issues, and additional amounts have been billed by the Committee's three other professionals -- Morrison & Foerster LLP, Alvarez and Marsal North America, LLC and Lazard Freres & Co. LLC.  See e.g., Weil's First Monthly Fee Statement [Docket No. 1420], ¶ 28(dd); Weil's Fifth Monthly Fee Statement [Docket No. 1508], and Weil's Sixth Monthly Fee Statement [Docket No. 1722]; see also Omnibus Order Granting Applications for Allowance and Payment of Interim Compensation for Services Rendered and Reimbursement of Expenses Incurred from April 21, 2016 Through and Including August 31, 2016, Annex I [Docket No. 1711] (acknowledgment by Weil, Morrison & Foerster LLP, Alvarez and Marsal North America, LLC, and Lazard Freres & Co. LLC of payment of fees in excess of Investigation Budget and agreement by such parties, among other things, to hold back such overpaid amounts from any future payment of any holdback amounts with respect to fees incurred during such period and not be paid any future amounts, subject to an opportunity to seek payment of such fees upon entry in connection with a final order approving fees and expenses in the cases).  Additionally, although they have no entitlement to payment, Kobre & Kim LLP, the Committee's counsel in this adversary proceeding, allegedly incurred $263,350.00 in fees for the period September 15, 2016 through October 31, 2016, presumably some of which is attributable to investigation.  See First Monthly Fee Statement of Kobre & Kim [Docket No. 2081].

interest shall be enjoined from seeking to exercise the rights of the Debtors' estates." (Final DIP Order ¶ 9)

In reliance upon such the terms and conditions of the Final DIP Order and the other DIP Loan Documents, including, the establishment of the Challenge Period, and the Claims Stipulations and Releases, the DIP Lenders continued to extend credit to the Debtors, including providing them with an additional $210,000,000 of "new money" loans. (Final DIP Order ¶ G(ii)(c))

### B. The Adversary Proceeding And Amended Complaint

On October 20, 2016, the last day of the Challenge Period, the Committee commenced this adversary proceeding by filing a complaint naming only four Prepetition First Lien Lenders and the First Lien Agent as defendants [Adv. Proc. No. 1] (the "**Complaint**"). Specifically, the Complaint named Wells Fargo Bank N.A., Goldman Sachs Bank USA, KeyBank National Association, Morgan Stanley Senior Funding, Inc. and BBVA Compass Bank as defendants (the "**First Lien Defendants**").

On November 21, 2016, more than one month after the expiration of the Challenge Period (as previously extended), the Committee filed the Amended Complaint. [Adv. Proc. No. 12]. Among other things, the Amended Complaint named for the first time the twelve New First Lien Defendants as defendants to its claim. The next day, on November 22, 2016, the First Lien Defendants moved to dismiss the adversary proceeding on various grounds. [Adv. Proc. Nos. 17, 18].

Americas 92273411

# ARGUMENT

### I. Standard

"In reviewing a Fed. R. Civ. P. 12(b)(6) motion, a court may consider the allegations in the complaint, exhibits attached to the complaint or incorporated therein by reference, matters of which judicial notice may be taken, and documents of which plaintiff has notice and relied upon in bringing the claim or that are integral to the claim." See In re Liquidation Trust v. Daimler AG (In re Old CarCo LLC), 435 B.R. 169, 177 (Bankr. S.D.N.Y. 2010)) (citations omitted). Further, "[c]ourts may also take judicial notice of a prior court order, to the extent it 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" ResCap Liquidating Trust v. Liebert Corp. (In re Residential Capital, LLC), No. 14-01969 (MG), 2015 Bankr. LEXIS 1820, at * 17-18 (Bankr. S.D.N.Y. 2015) (citations omitted).

### II. The Court Should Dismiss The Amended Complaint With Respect To The New First Lien Defendants For The Reasons Set Forth In The Earlier-Filed Motion To Dismiss

As set forth in First Lien Motion to Dismiss and Reply Brief, the Amended Complaint fails to state a claim against certain prepetition First Lien Lenders and the First Lien Agent. The Amended Complaint should be dismissed against the New First Lien Defendants for the same reasons and the New First Lien Defendants incorporate by reference each argument made therein as if made herein.

### III. Because The Committee Did Not Commence An Action Against The New First Lien Defendants Within The Challenge Period, The Claims Against The New First Lien Defendants Are Released And The Committee Is Enjoined From Pursuing Them

#### A. The Bankruptcy Court Should Enforce The Deadlines Established By The Final DIP Order

Bankruptcy Courts routinely recognize and affirm the importance of the stipulations and agreements as to the length of a challenge period set forth in an order providing necessary cash for a Debtor to operate in Chapter 11. In In re Intermet Corp., Judge Gross addressed a request by a creditors committee to extend the challenge period established in a cash collateral order. Judge Gross rejected the committee's request to extend the challenge period, remarking:

> the lenders are entitled to the benefit of their bargain, which led to the cash collateral order. I recognize that it may put additional pressure upon the Committee, it was a pressure and a time pressure that I recognized right at the outset . . . I just think that this was a matter, meaning the time for the investigation and the commencement of the litigation, was a matter that was so at the forefront of the use of cash collateral and the cash collateral is being used, that it would be inappropriate at this date and time for the Court to make any modification to that provision, and I know that it may place the Committee in a more difficult situation.

In re Intermet Corp., No. 08-11859 (Bankr. D. Del. Nov. 12, 2008) Tr. at 29:1-3, 9-16) (a copy of the transcript is attached as Exhibit 1 to the Feld Decl. attached hereto).

Here, the parties spent weeks negotiating the terms of the Final DIP Order. As in Intermet, the necessity of DIP financing and the Committee's challenge period was at the forefront of negotiations since the beginning of this case. In exchange for providing financing, the New First Lien Defendants demanded peace and repose concerning the validity of their claims if they were not sued prior to the expiration of the Challenge Period. They are entitled to reap the benefits of their bargain.

8

Further, deadlines are important in the bankruptcy context because they produce finality. See, e.g., Taylor v. Freeland & Kronz, 938 F.2d 420, 425 (3d Cir. 1991) ("In the bankruptcy context, the need for finality and certainty is especially acute."), aff'd, 503 U.S. 638 (1992); Taylor, 503 U.S. at 644 ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality."). That is especially true here, where the DIP Lenders, including the New First Lien Defendants, have been asked to provide, and have provided, multiple waivers under the DIP financing agreements. Thus, for the New First Lien Defendants, their continued financial support of this case has been predicated to some extent on their comfort that their claims have not been challenged.

### B. The Committee's Claims Are Released And Enjoined Pursuant To The Final DIP Order

The Final DIP Order contemplates that the Debtors' stipulations shall become binding such that all avoidance and lender-liability like claims against the Prepetition Secured Parties will be released and all parties will be enjoined from challenging the claims or liens of Prepetition Secured Parties if an adversary proceeding is not timely commenced against them. The Final DIP Order states in relevant part:

> The stipulations and admissions contained in this Final Order and the Interim Order, including the Claims Stipulations, shall be binding upon all other parties in interest . . . unless (a) the Committee . . . has duly filed an adversary proceeding challenging the validity, enforceability, priority or extent of any of the . . . Prepetition Collateral securing such obligations held by or on behalf of the applicable Prepetition Secured Parties or otherwise asserting or prosecuting any Avoidance Actions or any other claims . . . against any of the Prepetition Secured Parties in connection with any matter related to such obligations or the Prepetition Collateral by no later than the [expiration of the Challenge Period] . . . . If no such adversary proceeding is timely filed by the Committee prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to any Claims and Defenses . . . for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case, if any; and (y) the Prepetition Secured Obligations, the Prepetition First Priority Liens, Prepetition Second Priority Liens and the Prepetition Secured

9

<u>Parties shall not be subject to any other or further challenge and any party in interest shall be enjoined</u> from seeking to exercise the rights of the Debtors' estates. . . .

Final DIP Order ¶ 9 (emphasis added).

Thus, for the Committee to have preserved the claims asserted in the Amended Complaint against the Prepetition Secured Parties, including the New First Lien Defendants, it was required to commence timely an "adversary proceeding" prior to the expiration of the Challenge Period. With respect to the New First Lien Defendants, no adversary proceeding was timely filed prior to the expiration of the Challenge Period. The Stipulations are therefore binding on the Committee, the releases in the Final DIP Order are effective, and the Committee is enjoined from asserting claims against the New First Lien Defendants.

It is not sufficient that an adversary proceeding was timely commenced against selected First Lien Lenders, but not the New First Lien Defendants.[9] The Stipulations and Releases that became effective upon the Committee's failure to commence an adversary proceeding released "all current and future DIP Secured Parties and Prepetition Secured Parties . . . <u>and each Prepetition Secured Party</u> and their respective Affiliates" from the claims asserted in the Amended Complaint. (Final DIP Order ¶G(vi) (emphasis added)). It would make no sense for the effectiveness of the release of <u>each</u> of the twelve New First Lien Defendants to somehow be

---

[9] When a time limitation, such as the Challenge Period, is being interpreted, courts interpret "any" within this context to mean that "each and all" actions are subject to the deadline. For example, in <u>United States</u> v. <u>Fifty-Two Firearms</u>, 362 F.Supp.2d 1308, 1316 (M.D. Fl. 2005), the Court found that the word "any" in the context of the civil forfeiture statute—"Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure"—"cannot be fairly read as permitting the government to select 'any' one of several administrative and judicial forfeiture proceedings for commencement within 120 days, and then to commence the <u>other</u> related forfeiture proceedings at the government's leisure." <u>Id.</u> at 1317 (emphasis added); <u>see</u> <u>also</u> <u>Any</u>, BALLENTINE'S LAW DICTIONARY (3d ed., Lexis 2010) ("Any" can mean "each one of all."). For the same reason, the word "any"—as used in the Final DIP Order to describe the adversary proceeding the Committee must bring against "any" Prepetition Secured Creditor—means "each one of all" and does not permit the Committee to commence an adversary proceeding against one lender within the Challenge Period and then commence claims against <u>other</u> unaffiliated lenders at its leisure.

10

tied to the commencement of litigation against just four unrelated and unaffiliated lenders in the original Complaint. Similarly, the injunction that "the Prepetition Secured Parties shall not be subject to any other or further challenge and any party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates" became effective as to the New First Lien Defendants upon the Committee's failure to commence an adversary proceeding against them within the Challenge Period. (Final DIP Order ¶ 9) Again, the effectiveness of the injunction with respect to each New First Lien Defendant was dependent upon an adversary proceeding not being commenced against such New First Lien Defendant.

Further demonstrating that the requisite "adversary proceeding" under the Final DIP Order was required to be asserted against each First Lien Lender and not just against other lenders that participated in the first lien loans is that the contemplated adversary proceeding was to be commenced "in connection with any matter related to <u>such obligations</u>." (Final DIP Order ¶ 9) "Such obligations" refers to the claims held by the "<u>applicable</u> Prepetition Secured Parties." Each New First Lien Defendant is an "applicable Prepetition Secured Party." <u>Id</u>. Consequently, a challenge, to be timely, must be properly directed to <u>each</u> applicable lender and the obligations owed to it, not any lender against which a claim could be asserted.

### C. The Relation-Back Doctrine Is Inapplicable

Although it is sometimes observed that a pleading that is untimely due to the running of a statute of limitations may be resuscitated pursuant to the "relation-back" doctrine set forth in Federal Rule 15(c), that doctrine is inapplicable here. <u>First</u>, the Final DIP Order is not a statute of limitations. Rather, it is a court-sanctioned agreement representing a complex bargained-for-exchange among sophisticated parties regarding an agreed deadline to file a claim. The Federal Rules do not abrogate the parties' agreement or this Court's order.

11

<u>Second</u>, if Federal Rule 15(c) were applicable, on its face it does not help the Committee. Federal Rule 15(c), made applicable by Bankruptcy Rule 7015, provides in relevant part that an amended pleading relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). As the Eastern District of New York explained, the relation-back doctrine does not apply where a Plaintiff seeks to add an entirely new defendant that it neglected to name initially:

> As a matter of plain language, [Rule 15(c)(1)(C)] would appear to include only 'wrong party' cases, and not 'additional party' cases. This is because the 'mistake' has to 'concern' the 'identity' of the 'proper party.' In an 'additional party' case like this one, there generally will be no 'mistake concerning' the proper party's 'identity.' The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable. If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so.

<u>Animal Sci. Prods</u>. v. <u>Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)</u>, 995 F. Supp. 2d 125, 129 (E.D.N.Y. Jan. 31. 2014).

Indeed, there is no basis to find a "mistake" concerning any of the New First Lien Defendant's identities here, where the Committee spent nearly one million dollars over a period of greater than four months investigating its claims and was provided pre-complaint discovery

12

from multiple parties.[10]  See Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 468 B.R. 620, 628-629 (Bankr. S.D.N.Y. 2012) (relation-back doctrine did not rescue time-barred claim because, *inter alia*, it was plausible for defendants to infer that plaintiff omitted them deliberately from the complaint, as plaintiff was a sophisticated party with access to relevant documents and lawyers to review and analyze those documents).

To point out the most glaring example of the lack of any mistake as to the identity of the New First Lien Defendants, the Committee requested and received documents from Deutsche Bank AG as part of its investigation (Am. Compl. ¶ 168), but determined not to name Deutsche Bank AG as a party in the initial complaint.  Whether through intent or negligence, the Committee's failure to name Deutsche Bank AG or any other New First Lien Defendant as a defendant prior to the expiration of the Challenge Period cannot be chalked up to a "mistake concerning the proper party's identity" as required to satisfy Rule 15(c)(1)(C)(ii).

## CONCLUSION

The Amended Complaint should be dismissed with prejudice against the New First Lien Defendants.

---

[10] Moreover, there was limited trading of the First Lien debt, so there is no argument the Committee can plausibly make that its failure to timely name the New First Lien Defendants was based on factors outside its control.

Dated: January 24, 2017
      New York, New York

                                        Respectfully Submitted

                                        By:

                                        */s/* Douglas P. Baumstein
                                        Douglas P. Baumstein
                                        Scott Greissman
                                        Elizabeth Feld
                                        WHITE & CASE LLP
                                        1155 Avenue of the Americas
                                        New York, NY 10036
                                        Phone: 212.819.8200
                                        Fax: 212.354.8113
                                        Email: dbaumstein@whitecase.com
                                        Email: sgreissman@whitecase.com
                                        Email: efeld@whitecase.com

                                        *Counsel for BoA National Association,*
                                        *Barclays, Citicorp, Citigroup Financial,*
                                        *Citigroup Global, Credit Suisse Cayman, D.B.*
                                        *Cayman, Deutsche Bank AG, Macquarie,*
                                        *MIHI LLC, and RBC*