| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>New York, New York 10036<br>(212) 872-1000 (Telephone)<br>(212) 872-1002 (Facsimile)<br>David M. Zensky<br>Erik Preis<br>Deborah J. Newman<br><br>*Counsel to the Second Lien Lender Defendants* | WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>(212) 230-8800 (Telephone)<br>(212) 230-8888 (Facsimile)<br>Andrew Goldman<br>Charles C. Platt<br>Benjamin Loveland (admitted *pro hac vice*)<br>Lauren Lifland |
| PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1540 Broadway<br>New York, New York 10036<br>(212) 858-1000 (Telephone)<br>Leo T. Crowley<br>Daniel S. Brown<br><br>*Counsel to Wilmington Savings Fund Society, FSB, in its capacity as successor Administrative Agent under the Second Lien Credit Agreement* | *Counsel for Wilmington Trust, National Association, in its capacity as Indenture Trustee under the Second Lien Indenture and Collateral Trustee under the Security Agreement* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
In re:                                                            :
                                                                  :   Chapter 11
SUNEDISON, INC., *et al.*,                                        :   Case No. 16-10992 (SMB)
                                                                  :   (Jointly Administered)
                    Debtors.                                      :
                                                                  :
                                                                  :
----------------------------------------------------------------- x
                                                                  :
OFFICIAL COMMITTEE OF UNSECURED                                   :   Adversary Proceeding
CREDITORS, on behalf of the estates of the Debtors,               :   No. 16-01228 (SMB)
                                                                  :
                    Plaintiff,                                    :
            v.                                                    :
                                                                  :
WELLS FARGO BANK, N.A., *et al.*,                                 :
                                                                  :
                    Defendants.                                   :
----------------------------------------------------------------- x

**JOINT SUPPLEMENTAL MEMORANDUM OF LAW OF
THE SECOND LIEN DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 1

I. The Committee's Preference, Equitable Subordination, and Aiding and Abetting Claims Impermissibly Rely on Group Pleading (Counts 10, 11 and 15) ................................................................................................................. 1

II. The Committee's Intentional Fraudulent Transfer Claim Fails to Satisfy Rules 8 and 9 (Counts 4 and 5) ............................................................................. 6

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abner Realty, Inc. v. Admin. of Gen. Servs. Admin.*,
   No. 97 Civ. 3075(RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) ......................5

*Am. Sales Co. v. AstraZeneca AB*,
   No. 10 CIV. 6062 (PKC), 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) ................3

*Appalachian Enters., Inc. v. ePayment Sols., Ltd.*,
   No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004)...............2, 4

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M.
   Fabrikant & Sons, Inc.)*,
   447 B.R. 170 (Bankr. S.D.N.Y. 2011).................................................................7, 8

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M.
   Fabrikant & Sons, Inc.)*,
   480 B.R. 480 (S.D.N.Y. 2012)......................................................................6, 7, 8, 9

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
   No. 12-CV-5018 JS AKT, 2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013) ...............3

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ........................................................................2

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
   No. 09 CIV.4050 (PKC), 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ................2

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998)........................................................................2

*Hale v. Harney*,
   786 F.2d 688 (5th Cir. 1986) ...................................................................................6

*Holmes v. Allstate Corp.*,
   No. 11 CIV. 1543 (LTS) (DF), 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012),
   report and recommendation adopted, 2012 WL 626262 (S.D.N.Y. Feb. 27,
   2012) ........................................................................................................................3

*In re LightSquared Inc.*,
   504 B.R. 321 (Bankr. S.D.N.Y. 2013).....................................................................2

*Morrison v. Hoffmann-La Roche, Inc.*,
   No. 14-cv-4476 (DLI) (RML), 2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016) ........2

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008) .............................................................................1, 2

*Official Comm. of Unsecured Creditors v. Credit Suisse (In re Champion Enters., Inc.)*,
    No. 10-50514, 2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010) ...........................................2

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
    683 F. Supp. 1411 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989) ...................................2

**Other Authorities**

Fed R. Bankr. P. 7008 ..............................................................................................................2

Fed R. Bankr. P. 7009 ..............................................................................................................1

Fed R. Bankr. P. 9011 ..............................................................................................................5

Fed. R. Civ. P. 9(b) .....................................................................................................1, 2, 3, 6

Fed. R. Civ. P. 11(b)(3) ............................................................................................................5

16-01228-smb    Doc 101    Filed 03/23/17    Entered 03/23/17 16:10:37    Main Document
Pg 5 of 16

The Second Lien Defendants,[1] by and through their undersigned attorneys, hereby file this supplemental joint memorandum of law in response to the Court's request for supplemental briefing on the extent to which the Committee's pleadings must specifically identify the wrongdoers, transferees, and/or alleged insiders in connection with the Committee's intentional fraudulent transfer, preference, equitable subordination, and aiding and abetting claims (Counts 4, 5, 10, 11, and 15), and in further support of the Second Lien Defendants' Motion to Dismiss the Committee's Complaint.

## ARGUMENT

### I. The Committee's Preference, Equitable Subordination, and Aiding and Abetting Claims Impermissibly Rely on Group Pleading (Counts 10, 11 and 15)

1. The Committee's preference, equitable subordination, and aiding and abetting claims should be dismissed because they impermissibly rely on group pleading. To the extent that these claims are based on allegedly fraudulent conduct, they must satisfy the particularity requirements of Rule 7009 of the Federal Rules of Bankruptcy Procedure ("Rule 9"). *See, e.g., O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008) (Bernstein, J.) ("Even where fraud is not an element of the claim, the allegations must satisfy Fed. R. Civ. P. 9(b) if the claim is based on fraudulent conduct."). Under Rule 9, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *Id.*[2]

---

[1] The Second Lien Lender Defendants are identified in the Notices of Appearance and Requests for Service of All Pleadings and Documents [AP Docs. 23 & 63]. Capitalized terms not defined herein have the meanings ascribed to them in the *Joint Memorandum of Law of the Second Lien Defendants in Support of Their Motion to Dismiss* [AP Doc. 25] (the "2L Mov. Br.") and the *Joint Reply of the Second Lien Defendants in Further Support of Their Motion to Dismiss* [AP Doc. 46] (the "Second Lien Reply Brief" or "2L Reply Br.").

[2] *See also Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 CIV.4050 (PKC), 2010 WL 3790810, at *23 (S.D.N.Y. Sept. 28, 2010) (declining to permit group pleading with respect to securities fraud claims); *AlphaStar*, 383 B.R. at 257–58 (noting that Rule 9(b) generally forbids group pleading for allegations based on or involving fraud); *In re LightSquared Inc.*, 504 B.R. 321, 356 (Bankr. S.D.N.Y. 2013) (dismissing fraud and related tort claims under Rule 9(b) where complaint failed to "set forth any specific allegations with respect to" any

2.       Additionally, courts have held that equitable subordination claims against non-insiders must be "based on the claimant's own acts," and pled with particularity even if they are not based on fraudulent conduct. *Official Comm. of Unsecured Creditors v. Credit Suisse (In re Champion Enters., Inc.)*, No. 10-50514, 2010 WL 3522132, at *8, *10 (Bankr. D. Del. Sept. 1, 2010) ("Particularized fact pleading regarding the allegedly egregious behavior is required."); *see also In re Fedders N. Am., Inc.*, 405 B.R. 527, 554 (Bankr. D. Del. 2009) ("[T]he party seeking to apply equitable subordination bears a higher burden of proof in which he or she must show that the respondent engaged in egregious conduct such as fraud, spoliation or overreaching. Moreover, these facts must be pled with particularity.") (internal citations omitted).

3.       Even if the Committee's preference, equitable subordination, and aiding and abetting claims are subject only to the strictures of Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Rule 8"), the claims still may not rely on group pleading. Rule 8 requires a plaintiff to provide each defendant with "fair notice" of its allegations and the basis therefor. *Morrison v. Hoffmann-La Roche, Inc.*, No. 14-cv-4476 (DLI) (RML), 2016 WL 5678546, at *4 (E.D.N.Y. Sept. 29, 2016). A complaint fails to provide such notice where, as here, it "'lump[s] all the defendants together and fail[s] to distinguish their conduct…'" *Appalachian Enters., Inc. v. ePayment Sols., Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004); *see also United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1429 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989) ("The Amended Complaint's aiding and abetting allegation also runs counter to Rule 8's requirement that 'actions brought against multiple defendants must clearly specify the claims with which each

---

defendant); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 286 (S.D.N.Y. 1998) ("[A] claim may not rely upon blanket references to acts or omissions by all the defendants, for each defendant named is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he is individually charged.").

2

particular defendant is charged.'") (internal citation omitted); *Am. Sales Co. v. AstraZeneca AB*, No. 10 CIV. 6062 (PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) ("Rule 8(a) requires that a complaint against multiple defendants indicate clearly the defendants against which relief is sought and the basis upon which relief is sought against the particular defendants."); *Clayton's Auto Glass, Inc. v. First Data Corp.*, No. 12-CV-5018 JS AKT, 2013 WL 5460872, at *5 (E.D.N.Y. Sept. 30, 2013) ("Such 'group pleading' . . . fails to satisfy either the notice pleading requirements of Rule 8 or the heightened pleading standard under Rule 9(b) . . . ."); *Holmes v. Allstate Corp.*, No. 11 CIV. 1543 (LTS) (DF), 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), report and recommendation adopted, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

4.  The Committee's allegations that the Second Lien Lenders were insiders of the Debtors, that they engaged in conduct giving rise to a claim for equitable subordination, and that they aided and abetted an alleged breach of fiduciary duty, plainly fail to satisfy the "fair notice" requirement of Rule 8, the particularity required by Rule 9, and the case law addressing claims for equitable subordination. The Committee does not even attempt to differentiate among Defendants with respect to these allegations, or to explain which Defendants allegedly engaged in the alleged conduct that purportedly (i) rendered them insiders, (ii) justifies the remedy of equitable subordination; or (iii) gives rise to an aiding and abetting breach of fiduciary duty claim. To the contrary, the Committee's allegations in support of these claims refer only to "SUNE's secured creditors," "Defendants," "at least some of the Defendants," or "the Prepetition First Lien Lenders and Prepetition Second Lien Lenders."[3] Such "lump[ing] . . .

---

[3] Compl. ¶ 156 ("[s]hortly after closing the January 2016 Transactions, and as a result of the control and influence they achieved over SUNE through those Transactions, SUNE's secured creditors began to understand the

3

together" of defendants is exactly the type of group pleading that is prohibited by Rules 8 and 9. *See, e.g., Appalachian Enters.*, 2004 WL 2813121, at *7.[4]

5. Indeed, the Committee does not appear to dispute that it has relied on group pleading, notwithstanding its belief that certain of the Second Lien Defendants likely did not engage in the alleged conduct. To the contrary, despite having had the benefit of and opportunity for further pre-filing discovery, Committee counsel posited at the hearing before this Court on February 16 (the "February 16 Hearing") that the Committee does not have to "name who was an insider as of what date for what actions," and admitted that the Committee (i) "do[es]n't know" whether its allegations respecting the lenders' conduct are accurate, (ii) would need to take more discovery to determine which of the lender defendants (if any) actually engaged in the conduct the Committee is accusing them of; and (iii) believes that certain of the lender Defendants may not be original lenders or participants in the DIP financing, and thus could not have engaged in such alleged conduct. Transcript of the February 16 Hearing ("Hr'g Tr.") 132:12–15 (M. Kim); Hr'g Tr. 137:6–11 (M. Kim) ("the complaint alleges [the first and Second Lien Lenders] acted really as a group with the debtor to effectuate a series of transactions. Now, again, laying aside

---

true state of SUNE's liquidity crisis"), ¶ 162 ("Defendants . . . dictated the appointment of a chief restructuring officer, were involved in deciding which entities would file for bankruptcy protection, and expressly acknowledged potential preference liability . . ."); ¶ 163 ("at least some Defendants knew that certain aspects of the January 2016 Transactions, including the Debt Exchange, constituted avoidable preferential transfers . . . upon information and belief, SUNE's secured creditors influenced SUNE to delay filing for bankruptcy . . ."); ¶ 164 ("the deal fell apart because the Prepetition First Lien Lenders and Prepetition Second Lien Lenders did not support it . . ."); ¶ 165 ("[t]he Prepetition First Lien Lenders and Prepetition Second Lien Lenders claimed they had structural priority over proceeds from subsidiary assets and then used their superior position in the value chain to justify getting liens over previously unencumbered assets."); ¶ 166 ("Altogether this control was so total that Defendants were functionally insiders.").

[4] The only allegations that are tied to a specific Second Lien Lender Defendant are citations to (i) an internal email written by employees of a single Second Lien Lender Defendant (out of more than six dozen Second Lien Lender Defendants), and (ii) another email written by the chief executive officer of that Second Lien Lender Defendant. Compl. ¶¶ 134, 156. As set forth in the Second Lien Defendant Reply Brief, however, these emails do not show that this Second Lien Lender Defendant was an insider of the Debtors at any time, that it engaged in inequitable conduct, or that it aided and abetted any breach of fiduciary duty by the Debtors' Boards of Directors. 2L Reply Br. ¶ 45. Nor does the Complaint allege any basis on which to impute the statements or alleged actions of this Second Lien Lender Defendant to any of the other Second Lien Lender Defendants.

4

whether they say it's inaccurate, we basically have unsworn briefings from counsel saying that never happened. Okay? ***They may be correct. We don't know***.) (emphasis added); Hr'g Tr. 143:12–13 (B. Sauter) ("We don't know the parties who were involved, at the end of the day, in the DIP financing."); Hr'g Tr. 144:8–11(B. Sauter) ("So some of the people who are being added could be people who bought debt on the secondary market and now have a claim in bankruptcy, even if they weren't necessarily involved in the initial transaction.").

6. Committee counsel's admissions demonstrate that the Committee has not only violated Rules 8 and 9, but also Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Rule 11"). Rule 11 provides that by submitting a pleading to a court, "an attorney . . . certif[ies] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [the] factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery …" Fed. R. Bankr. P. 9011. As the Advisory Committee Notes to Federal Rule of Civil Procedure 11, which is substantially similar to Rule 11, state, although a plaintiff may make factual contentions in initial pleadings on information and belief, litigants are not relieved "from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; [and] it is not a license to . . . make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11(b)(3) advisory committee's notes to 1993 amendment; *see also Abner Realty, Inc. v. Admin. of Gen. Servs. Admin.*, No. 97 Civ. 3075(RWS), 1998 WL 410958, at *4 (S.D.N.Y. July 22, 1998) ("Rule 11 requires that an attorney make a prefiling inquiry to establish reasonable ground to believe that further investigation and discovery will prove his case . . . where an attorney can get the information

5

necessary to certify the validity of a claim in a public fashion and need not rely solely on his client, he must do so.") (internal citations omitted).

7. Thus, "[t]he day is past when . . . notice pleading practice … [and] liberal discovery rules invited the federal practitioner to file suit first and find out later whether he had a case or not." *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir. 1986). By its own admission, this is exactly what the Committee has done here. *See* Hr'g Tr. 137:6–11 (M. Kim); Hr'g Tr. 143:12–13 (B. Sauter); Hr'g Tr. 144:8–11(B. Sauter). And the Committee's "shoot first" approach is particularly egregious, given that the Committee had the benefit of discovery from multiple parties, including the Debtors, prior to filing the Complaint, and could have availed itself of additional discovery. *See* Compl. ¶ 168.

## II. The Committee's Intentional Fraudulent Transfer Claim Fails to Satisfy Rules 8 and 9 (Counts 4 and 5)

8. The Committee's intentional fraudulent transfer claims should also be dismissed because they fail to satisfy Rules 8 and 9. With respect to intentional fraudulent conveyance claims, Rule 9 requires a plaintiff to allege with particularity (1) "the circumstances constituting [the] fraud," and (2) "facts that give rise to a strong inference of fraudulent intent." Fed. R. Civ. P. 9(b); *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 480 B.R. 480, 485 (S.D.N.Y. 2012) ("M. Fabrikant II"). Additionally, a plaintiff must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." *Id*. at 490.

9. As set forth in the Second Lien Defendants' prior briefing, the Committee has failed to satisfy this standard. 2L Mov. Br. ¶¶ 45, 48–53; 2L Reply Br. ¶¶ 22–26. As the Court pointed out at the February 16 Hearing, the Committee appears to be attempting to invoke (although does not actually assert) a "collapsing" theory, which would allege that the Second

6

Lien Lender Defendants loaned the Debtors the proceeds of the January Financing with the knowledge that those proceeds would then be immediately transferred out of the corporate enterprise for less than reasonably equivalent value, leaving the Debtors with the additional debt and liens, but no (or little) additional value. *See, e.g.*, Hr'g Tr. 111:3–12, 121:23–122:7, 127:8–10 (J. Bernstein). To the extent that the Committee is attempting to belatedly assert such a theory, however, it has failed in its efforts.[5]

10. As this Court has noted, in certain circumstances, "multiple transactions will be collapsed and treated as steps in a single transaction for analysis under the fraudulent conveyance laws." *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 447 B.R. 170, 186 (Bankr. S.D.N.Y. 2011) (Bernstein, J.) ("M. Fabrikant I"). A plaintiff seeking to collapse transactions in this manner must show that (i) the consideration received by the debtor in exchange for the transfer or obligation was "reconveyed by the debtor for less than fair consideration or with actual intent to defraud creditors," and (ii) the initial transferee or obligee (here, the Second Lien Lenders) had "actual or constructive knowledge of the entire scheme that renders the exchange with the debtor fraudulent." *Id.* at 186–87. Further, the plaintiff must satisfy the particularity requirement of Rule 9 with respect to each alleged transfer. *Id.* at 186.

11. Here, not only does the Complaint fail to allege with particularity that any of the proceeds of the January Financing were reconveyed by the Debtors for less than reasonably equivalent value as part of an integrated transaction including the January Financing, it fails to make that allegation in any way at all. *See M. Fabrikant II*, 480 B.R. at 488 (affirming this Court's dismissal of complaint because, *inter alia*, the complaint did not "*plausibly* establish that

---

[5] Committee counsel appeared to indicate at the February 16 Hearing that it is in fact attempting to assert such a theory with respect to the Second Lien Lender Defendants. H'rg Tr. 121:15–22; 123:15–20 (M. Kim).

7

loans . . . were reconveyed . . . as part of a single transaction.") (emphasis in original). To the contrary, the Complaint acknowledges that $174 million of the proceeds of the January Financing were used to pay existing indebtedness on which the Debtors (including the Subsidiary Guarantors)[6] were obligated, and says ***nothing at all*** about the way in which the Debtors used the remaining proceeds. The Committee's assertion that the Court may infer that the remaining proceeds "may well have been diverted to other improper ends," Comm. Br. at 16–17, 24, is directly contrary to applicable law, and is undermined by the Committee's acknowledgment that the Debtors received reasonably equivalent value in exchange for at least $174 million of the proceeds. *See, e.g., M. Fabrikant II*, 480 B.R. at 488 ("By acknowledging that at least some of the transfers . . . were in fact for reasonably equivalent value, the [Complaint] essentially undercuts the notion that the transactions at issue constituted a unified scheme to defraud Debtors' creditors.").

12. Additionally, as this Court has held, in order to state a fraudulent conveyance claim based on collapsing, a plaintiff must allege that each defendant had actual or constructive knowledge "of the entire scheme that renders the exchange with the debtor fraudulent," and the Court must "examine the knowledge of each participant separately." *M. Fabrikant I*, 447 B.R at 187. The Complaint fails to offer any (let alone any particularized) facts that any Second Lien Lender Defendant had actual or constructive knowledge (i) that the proceeds of the January Financing would be impermissibly reconveyed (which is not surprising, since no such improper reconveyance is alleged), or (ii) that the Debtors were insolvent at the time of the January

---

[6] Part of the proceeds of the January Financing ($169 million) were used to pay off an existing second lien term loan (the "Refinanced Second Lien Term Loan"). Compl. ¶ 138. The Refinanced Second Lien Term Loan was guaranteed by all of the Subsidiary Guarantors, with the exception of SUNE ML 1, LLC. *See* Guaranty Agreement dated as of August 11, 2015 (the relevant pages of which are attached as Exhibit G to the Declaration of Deborah J. Newman in Support of the Second Lien Defendants' Motion to Dismiss [AP Doc. 26] (the "Newman Declaration")). Additionally, $5 million of the proceeds from the Second Lien Term Loan were used to refinance a margin loan on which SUNE ML 1, LLC was the obligor. Compl. ¶ 138; Second Lien Credit Agreement, Recitals ¶ 2 (the relevant pages of the Second Lien Credit Agreement are attached as Exhibit D to the Newman Declaration).

8

Financing. Nor does the Complaint support the Committee's conclusory assertions, in its Opposition Brief and at oral argument, that the Second Lien Lenders were in a "close relationship" with the Debtors, or that the January Financing affected a "*quid pro quo*" in which the Second Lien Lenders knowingly enabled the Debtors to hide their alleged accounting fraud. Comm. Br. at 2, 8, 10–11; Hr'g Tr. at 114:11 (M. Kim).

13. Quite the opposite, the Complaint alleges that at the time of the January Financing, "as a result of Management's gross financial improprieties," the Second Lien Lender Defendants believed that SUNE "still had significant value," and "would quickly rebound from its liquidity crunch…" Compl. ¶ 133. Additionally, while the Committee repeatedly cites an internal email exchange between employees of a single Second Lien Lender Defendant (out of more than six dozen), in which one of the employees speculates that SUNE was willing to agree to the terms of the January Financing so that it could avoid raising money on the public markets where it would need to be more transparent, the Complaint does not allege—with particularity or otherwise—that this, or any other Second Lien Lender Defendant, believed the Debtors were misrepresenting their financial condition, or intended to reconvey the proceeds of the January Financing in a manner that would not benefit the Debtors. Compl. ¶ 134.

14. Nor would such an allegation be plausible. As this Court has recognized, any allegation that the Second Lien Lender Defendants loaned the Debtors $725 million with knowledge that the Debtors would be insolvent following that cash infusion, or would not benefit from the newly infused funds, would be "counterintuitive." Tr. of Jan. 10, 2017 Conf. regarding scheduling and discovery dispute at 10–11 [AP Doc. 48]; *see also M. Fabrikant II*, 480 B.R. at 489 (rejecting the allegation that defendant banks took the "risk of continuing their lending

9

relationships with" the debtors with knowledge that the funds lent would not benefit the debtors as "nonsensical," and "highly implausible, bordering on the absurd").

## CONCLUSION

For the reasons stated herein and in the Second Lien Defendants' Moving and Reply Briefs, the Second Lien Defendants respectfully request that the Court enter an order dismissing Counts 4, 5, 7, 8, 10–13 and 15 of the Complaint, with prejudice.

Dated:   New York, New York
         March 2, 2017

                                         AKIN GUMP STRAUSS HAUER & FELD LLP

                                         By:   */s/ David M. Zensky*
                                               David M. Zensky
                                               Erik Preis
                                               Deborah J. Newman
                                               Akin Gump Strauss Hauer & Feld LLP
                                               One Bryant Park
                                               New York, New York 10036
                                               (212) 872-1000 (Telephone)
                                               (212) 872-1002 (Facsimile)
                                               apreis@akingump.com
                                               dzensky@akingump.com
                                               djnewman@akingump.com

                                         *Counsel to the Second Lien Lender Defendants*

                                         WILMER CUTLER PICKERING
                                         HALE AND DORR LLP

                                         By:   */s/ Andrew Goldman*
                                               Andrew Goldman
                                               Charles C. Platt
                                               Benjamin Loveland (admitted *pro hac vice*)
                                               Lauren Lifland
                                               7 World Trade Center
                                               250 Greenwich Street
                                               New York, New York 10007
                                               (212) 230-8800 (Telephone)

        (212) 230-8888 (Facsimile)
andrew.goldman@wilmerhale.com
charles.platt@wilmerhale.com

*Counsel for Wilmington Trust, National Association, in its capacity as Indenture Trustee under the Second Lien Indenture and Collateral Trustee under the Security Agreement*

PILLSBURY WINTHROP
SHAW PITTMAN LLP

By:  */s/ Leo T. Crowley*
     Leo T. Crowley
     Daniel S. Brown
     1540 Broadway
     New York, New York 10036
     (212) 858-1000 (Telephone)
     (212) 858-1500 (Facsimile)
     leo.crowley@pillsburylaw.com

*Counsel to Wilmington Savings Fund Society, FSB, in its capacity as successor Administrative Agent under the Second Lien Credit Agreement*